# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SHAEKH AHAMED,                                  **Docket No.: 3:24-cv-01551**

        Plaintiff,                          <u>**CIVIL ACTION**</u>

v.                                              **COMPLAINT**
                                        **AND**
                                        **DEMAND FOR JURY TRIAL**

AMERICAN EXPRESS COMPANY;
BANK OF AMERICA, N.A.;
BARCLAYS BANK DELAWARE;
EQUIFAX INFORMATION SERVICES, LLC;
EXPERIAN INFORMATION SOLUTIONS, INC.;
and TRANS UNION, LLC;

        Defendants.
_____/

By and through the undersigned counsel, Plaintiff Shaekh Ahamed ("Plaintiff"), with knowledge as to his own acts and investigation of counsel as to the acts of others, believing that further investigation and discovery will confirm that such allegations have substantial evidentiary support, alleges as follows:

## <u>PRELIMINARY STATEMENT</u>

1. Pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), Plaintiff brings this action against American Express Company ("American Express"), Bank of America, N.A. ("Bank of America"), Barclays Bank Delaware ("Barclays"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union"; together Equifax, Experian, and Trans Union are the "CRAs" or "CRA Defendants") to recover actual, statutory, and punitive damages, as well as costs and attorney's fees and injunctive relief.

2. Congress enshrined within the FCRA the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." § 1681(a)(4).

3. Moreover, Congress has plainly stated the purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…" § 1681(b).

4. Similarly, courts have stated that the purpose of the FCRA is to address the "serious problem in the credit reporting industry. . . of inaccurate or misleading information." *Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017) (internal quotation marks and emphasis omitted); *see also, e.g., Porter v. Talbot Perkins Children's Servs.*, 355 F. Supp. 174, 176 (S.D.N.Y. 1973) (noting that "[t]he purpose of the Fair Credit Reporting Act is to protect an individual from inaccurate or arbitrary information about [that individual from appearing] in a consumer report . . . ") (citing 116 Cong. Rec. 36572 (1970)).

### *American Express account*

5. As set forth herein, American Express, Equifax, Experian, and Trans Union denied Plaintiff the protections provided by the FCRA concerning American Express account number 349992334014**** (the "American Express account").

6. On September 19, 2023, Plaintiff sent dispute letters to Equifax, Experian, and Trans Union informing each CRA Defendant that it was reporting an inaccurate balance and monthly payment amounts for the American Express account. As a result, the CRAs sent Plaintiff

investigation results unlawfully verifying that the inaccurate balance and monthly payment amounts were accurately reporting.

7. On December 1, 2023, Plaintiff sent a second round of dispute letters to Equifax, Experian, and Trans Union once again informing each CRA Defendant that it was reporting an inaccurate balance and monthly payment amounts for the American Express account. As a result, the CRAs once again sent Plaintiff investigation results unlawfully verifying that the inaccurate balance and monthly payment amounts were accurately reporting.

8. Upon information and belief, after receiving notice of Plaintiff's disputes from Equifax, Experian, and Trans Union, and notwithstanding the fact that American Express *knew* that the inaccurate balance and monthly payment amounts it was reporting to the CRAs were inaccurate, American Express repeatedly verified the inaccurate balance and monthly payment amounts to the CRAs.

9. Despite Plaintiff's disputes, the CRA Defendants did not correct the inaccurate balance and monthly payment amounts they were reporting. Upon information and belief, the CRA Defendants continue to report the inaccurate balance and monthly payment amounts for the American Express account to this day.

10. American Express is liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

   a. failing to conduct reasonable investigations of Plaintiff's disputes of the inaccurate balance and monthly payment amounts for the American Express account reporting on Plaintiff's credit reports with Equifax, Equifax, and Trans Union, respectively;

   b. failing to review all relevant information provided to American Express by each CRA Defendant concerning Plaintiff's disputes; and

    c. failing to promptly modify, delete, or permanently block any and all disputed information about the American Express account on Plaintiff's credit file with each CRA Defendant that American Express could not affirmatively verify as accurate.

11. Similarly, each CRA Defendant is liable to Plaintiff for violations of several provisions of § 1681i of the FCRA due to their respective acts and omissions, including, but not limited to, the following:

    a. failing to (i) conduct reasonable investigations of the disputed American Express account tradeline to determine whether the information Plaintiff disputed was accurate, and (ii) record the correct status of the American Express account, in violation of § 1681i(a)(1);

    b. failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes about the American Express account, in violation of § 1681i(a)(4); and

    c. failing to promptly update the disputed American Express account tradeline on Plaintiff's credit file despite the fact that no CRA Defendant could have affirmatively verified the inaccurate balance and monthly payment amounts as accurate upon a lawful reinvestigation of Plaintiff's disputes, in violation of § 1681i(a)(5).

### *Bank of America account*

12. As set forth herein, Bank of America, Equifax, Experian, and Trans Union denied Plaintiff the protections provided by the FCRA concerning Bank of America account number 440066661080**** (the "Bank of America account").

13. On September 19, 2023, Plaintiff sent dispute letters to Equifax, Experian, and Trans Union informing each CRA Defendant that it was reporting an inaccurate balance and monthly

payment amounts for the Bank of America account. As a result, the CRAs sent Plaintiff investigation results unlawfully verifying that the inaccurate balance and monthly payment amounts were accurately reporting.

14. On December 1, 2023, Plaintiff sent a second round of dispute letters to Equifax, Experian, and Trans Union once again informing each CRA Defendant that it was reporting an inaccurate balance and monthly payment amounts for the Bank of America account. As a result, the CRAs once again sent Plaintiff investigation results unlawfully verifying that the inaccurate balance and monthly payment amounts were accurately reporting.

15. Upon information and belief, after receiving notice of Plaintiff's disputes from Equifax, Experian, and Trans Union, and notwithstanding the fact that Bank of America *knew* that the inaccurate balance and monthly payment amounts it was reporting to the CRAs were inaccurate, Bank of America repeatedly verified the inaccurate balance and monthly payment amounts to the CRAs.

16. Despite Plaintiff's disputes, the CRA Defendants did not correct the inaccurate balance and monthly payment amounts they were reporting. Upon information and belief, the CRA Defendants continue to report the inaccurate balance and monthly payment amounts for the Bank of America account to this day.

17. Bank of America is liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

   a. failing to conduct reasonable investigations of Plaintiff's disputes of the inaccurate balance and monthly payment amounts for the Bank of America account reporting on Plaintiff's credit reports with Equifax, Equifax, and Trans Union, respectively;

b.  failing to review all relevant information provided to Bank of America by each CRA Defendant concerning Plaintiff's disputes; and

c.  failing to promptly modify, delete, or permanently block any and all disputed information about the Bank of America account on Plaintiff's credit file with each CRA Defendant that Bank of America could not affirmatively verify as accurate.

18.  Similarly, each CRA Defendant is liable to Plaintiff for violations of several provisions of § 1681i of the FCRA due to their respective acts and omissions, including, but not limited to, the following:

a.  failing to (i) conduct reasonable investigations of the disputed Bank of America account tradeline to determine whether the information Plaintiff disputed was accurate, and (ii) record the correct status of the Bank of America account, in violation of § 1681i(a)(1);

b.  failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes about the Bank of America account, in violation of § 1681i(a)(4); and

c.  failing to promptly update the disputed Bank of America account tradeline on Plaintiff's credit file despite the fact that no CRA Defendant could have affirmatively verified the inaccurate balance and monthly payment amounts as accurate upon a lawful reinvestigation of Plaintiff's disputes, in violation of § 1681i(a)(5).

### _Barclays account_

19.  As set forth herein, Barclays, Equifax, Experian, and Trans Union denied Plaintiff the protections provided by the FCRA concerning Barclays account number 2602**** (the "Barclays account").

20. On September 19, 2023, Plaintiff sent dispute letters to Equifax, Experian, and Trans Union informing each CRA Defendant that it was reporting an inaccurate balance and monthly payment amounts for the Barclays account. As a result, the CRAs sent Plaintiff investigation results unlawfully verifying that the inaccurate balance and monthly payment amounts were accurately reporting.

21. On December 1, 2023, Plaintiff sent a second round of dispute letters to Equifax, Experian, and Trans Union once again informing each CRA Defendant that it was reporting an inaccurate balance and monthly payment amounts for the Barclays account. As a result, the CRAs once again sent Plaintiff investigation results unlawfully verifying that the inaccurate balance and monthly payment amounts were accurately reporting.

22. Upon information and belief, after receiving notice of Plaintiff's disputes from Equifax, Experian, and Trans Union, and notwithstanding the fact that Barclays *knew* that the inaccurate balance and monthly payment amounts it was reporting to the CRAs were inaccurate, Barclays repeatedly verified the inaccurate balance and monthly payment amounts to the CRAs.

23. Despite Plaintiff's disputes, the CRA Defendants did not correct the inaccurate balance and monthly payment amounts they were reporting. Upon information and belief, the CRA Defendants continue to report the inaccurate balance and monthly payment amounts for the Barclays account to this day.

24. Barclays is liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

    a. failing to conduct reasonable investigations of Plaintiff's disputes of the inaccurate balance and monthly payment amounts for the Barclays account reporting on Plaintiff's credit reports with Equifax, Equifax, and Trans Union, respectively;

    b. failing to review all relevant information provided to Barclays by each CRA Defendant concerning Plaintiff's disputes; and

    c. failing to promptly modify, delete, or permanently block any and all disputed information about the Barclays account on Plaintiff's credit file with each CRA Defendant that Barclays could not affirmatively verify as accurate.

25. Similarly, each CRA Defendant is liable to Plaintiff for violations of several provisions of § 1681i of the FCRA due to their respective acts and omissions, including, but not limited to, the following:

    a. failing to (i) conduct reasonable investigations of the disputed Barclays account tradeline to determine whether the information Plaintiff disputed was accurate, and (ii) record the correct status of the Barclays account, in violation of § 1681i(a)(1);

    b. failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes about the Barclays account, in violation of § 1681i(a)(4); and

    c. failing to promptly update the disputed Barclays account tradeline on Plaintiff's credit file despite the fact that no CRA Defendant could have affirmatively verified the inaccurate balance and monthly payment amounts as accurate upon a lawful reinvestigation of Plaintiff's disputes, in violation of § 1681i(a)(5).

26. As a direct and proximate result of each Defendant's negligent and willful actions, conduct, and omissions, Plaintiff suffered actual damages, cognizable pursuant to the

FCRA. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.[1]

27. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

## **PARTIES**

28. Plaintiff is an individual and "consumer" within the meaning of the FCRA (15 U.S.C. § 1681a(c)). Plaintiff resides in Norwalk, Connecticut.

29. American Express is a company that furnishes consumer credit information to consumer reporting agencies. It has a principal place of business located at 200 Vesey Street New York, NY 10285.

30. American Express is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2 et seq.).

31. Bank of America is a company that furnishes consumer credit information to consumer reporting agencies. It has a principal place of business located at 100 North Tryon Street, Charlotte, NC 28255.

32. Bank of America is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2 et seq.).

33. Barclays is a company that furnishes consumer credit information to consumer reporting agencies. It has a principal place of business located at 125 South West Street, Wilmington, DE 19801.

---

[1] Plaintiff may have also suffered direct credit harm due to Defendants' violations of the FCRA. Plaintiff intends to inquire into the extent of direct credit harm he may have suffered through discovery from Defendants and third-parties.

34. Barclays is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2 et seq.).

35. Equifax, Experian and Trans Union are consumer reporting agencies as defined by the FCRA (15 U.S.C. § 1681a(f)).

## FACTUAL ALLEGATIONS

### *American Express account*

36. On or around September 2023, Plaintiff and American Express agreed to settle the American Express account in the amount of $5,381.59.

37. Specifically, Plaintiff and American Express agreed that Plaintiff would enter into a payment installment agreement wherein Plaintiff agreed to make an initial payment of $224.24, twenty-two subsequent payments of $224.24, and a final payment of $224.07, until the total amount of $5,381.59 was completed.

38. As a result, Plaintiff received a settlement letter, dated September 1, 2023, from American Express confirming the above-referenced settlement and payment installment agreement between Plaintiff and American Express.

39. However, American Express is reporting an inaccurate balance of $8,663.00 (and is not reporting the agreed upon monthly payment amount) on Plaintiff's Equifax, Experian, and Trans Union credit reports – despite Plaintiff's settlement and payment installment agreement with American Express regarding the American Express account.

40. Following Plaintiff's disputes, American Express, Equifax, Experian, and Trans Union failed to perform FCRA-required reasonable investigations. As such, American Express unlawfully verified the disputed inaccurate balance and monthly payment amounts and each CRA Defendants, in turn, continued to report an incorrect, and therefore unverifiable,

inaccurate balance and monthly payment amounts on (a) Plaintiff's Equifax, Experian, and Trans Union credit reports and, upon information and belief, (b) consumer reports about Plaintiff that each CRA Defendant prepared and distributed to third-parties.

41. American Express, Equifax, Experian, and Trans Union included the inaccurate balance and monthly payment amounts, associated with the American Express account, on consumer reports published to third parties. These publications defamed Plaintiff, thereby (a) giving creditors and/or potential creditors the false impression that Plaintiff was a poor credit risk, (b) impugning Plaintiff's reputation and character, and (c) causing Plaintiff to suffer substantial emotional distress. As such, Plaintiff has suffered concrete and particularized injuries pursuant to the FCRA such that Plaintiff has Article III standing to bring claims under the FCRA.

42. According to Plaintiff's Equifax credit report, dated May 30, 2024, there is one (1) inquiry on Plaintiff's credit file with Equifax. Specifically, there was a dissemination of inaccurate credit information, regarding the American Express account reported on Plaintiff's Equifax credit report, to Capital One (on April 25, 2024).

43. According to Plaintiff's Experian credit report, dated May 30, 2024, there are three (3) inquiries on Plaintiff's credit file with Experian. Specifically, there was a dissemination of inaccurate credit information, regarding the American Express account reported on Plaintiff's Experian credit report, to Capital One (on April 25, 2024), Bank of America (on May 29, 2024), and Citibank (on May 29, 2024).

44. According to Plaintiff's Trans Union credit report, dated May 30, 2024, there is one (1) inquiry on Plaintiff's credit file with Trans Union. Specifically, there was a dissemination

of inaccurate credit information, regarding the American Express account reported on Plaintiff's Trans Union credit report, to Capital One (on April 25, 2024).

45. Furthermore, on or around February 2024, Plaintiff's request for credit with American Express, for a Blue Cash Everyday credit card, was not approved on or around February 7, 2024. This decline for credit signifies the dissemination of inaccurate credit profile information to third-party American Express.

***Equifax reported (and is likely still reporting) inaccurate balances and monthly payment amounts for the American Express account***

46. Equifax has reported and likely continues to report, a tradeline for the American Express account showing an inaccurate balance and monthly payment amounts on Plaintiff's Equifax credit report.

***Experian reported (and is likely still reporting) inaccurate balances and monthly payment amounts for the American Express account***

47. Experian has reported and likely continues to report, a tradeline for the American Express account showing an inaccurate balance and monthly payment amounts on Plaintiff's Experian credit report.

***Trans Union reported (and is likely still reporting) inaccurate balances and monthly payment amounts for the American Express account***

48. Trans Union has reported and likely continues to report, a tradeline for the American Express account showing an inaccurate balance and monthly payment amounts on Plaintiff's Trans Union credit report.

*Plaintiff's Disputes*

### *Equifax Disputes and Dispute Results*

49. By letter dated September 19, 2023, Plaintiff wrote Equifax to dispute the inaccurate balance and monthly payment amounts that Equifax was reporting concerning the American Express account. Specifically, Plaintiff informed Equifax of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also attached American Express's settlement letter, dated September 1, 2023 wherein American Express confirmed the settlement and payment installment agreement between Plaintiff and American Express. Plaintiff's September 19, 2023 dispute letter was sent via certified mail.

50. Plaintiff did not receive a response from Equifax. However, Equifax continued to report the inaccurate balance and monthly payment amounts, associated with the American Express account, on Plaintiff's Equifax credit report.

51. By letter dated December 1, 2023, Plaintiff once again wrote Equifax to dispute the inaccurate balance and monthly payment amounts that Equifax was reporting concerning the American Express account. Specifically, Plaintiff once again informed Equifax of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also once again attached American Express's settlement letter, dated September 1, 2023 wherein American Express confirmed the settlement and payment installment agreement between Plaintiff and American Express. Plaintiff's December 1, 2023 dispute letter was sent via certified mail.

52. Plaintiff once again did not receive a response from Equifax. However, Equifax once again continued to report the inaccurate balance and monthly payment amounts, associated with the American Express account, on Plaintiff's Equifax credit report – according to Plaintiff's Equifax credit report, dated January 24, 2024.

***Experian Disputes and Dispute Results***

53. By letter dated September 19, 2023, Plaintiff wrote Experian to dispute the inaccurate balance and monthly payment amounts that Experian was reporting concerning the American Express account. Specifically, Plaintiff informed Experian of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also attached American Express's settlement letter, dated September 1, 2023 wherein American Express confirmed the settlement and payment installment agreement between Plaintiff and American Express. Plaintiff's September 19, 2023 dispute letter was sent via certified mail.

54. Experian refused to do a reinvestigation and instead sent Plaintiff a letter, dated October 11, 2023, wherein Experian informed Plaintiff that it could not locate Plaintiff's credit information. Accordingly, Experian continued to report the inaccurate balance and monthly payment amounts, associated with the American Express account, on Plaintiff's Experian credit report.

55. By letter dated December 1, 2023, Plaintiff once again wrote Experian to dispute the inaccurate balance and monthly payment amounts that Experian was reporting concerning the American Express account. Specifically, Plaintiff once again informed Experian of the following: "I have renegotiated the accounts and came to a different payment and total

amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also once again attached American Express's settlement letter, dated September 1, 2023 wherein American Express confirmed the settlement and payment installment agreement between Plaintiff and American Express. Plaintiff's December 1, 2023 dispute letter was sent via certified mail.

56. Plaintiff received dispute results from Experian dated December 22, 2023. Experian's dispute results unlawfully verified that the inaccurate balance and monthly payment amounts, associated with the American Express account, was correctly reporting.

57. Furthermore, Plaintiff ran his Experian credit report on January 24, 2024 and noticed that Equifax continued to report the inaccurate balance and monthly payment amounts, associated with the American Express account, on Plaintiff's Experian credit report.

***Trans Union Disputes and Dispute Results***

58. By letter dated September 19, 2023, Plaintiff wrote Trans Union to dispute the inaccurate balance and monthly payment amounts that Trans Union was reporting concerning the American Express account. Specifically, Plaintiff informed Trans Union of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also attached American Express's settlement letter, dated September 1, 2023 wherein American Express confirmed the settlement and payment installment agreement between Plaintiff and American Express. Plaintiff's September 19, 2023 dispute letter was sent via certified mail.

59. Plaintiff received dispute results from Trans Union dated October 19, 2023. Trans Union's dispute results unlawfully verified that the inaccurate balance and monthly payment amounts, associated with the American Express account, were correctly reporting.

60. By letter dated December 1, 2023, Plaintiff once again wrote Trans Union to dispute the inaccurate balance and monthly payment amounts that Trans Union was reporting concerning the American Express account. Specifically, Plaintiff once again informed Trans Union of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also once again attached American Express's settlement letter, dated September 1, 2023 wherein American Express confirmed the settlement and payment installment agreement between Plaintiff and American Express. Plaintiff's December 1, 2023 dispute letter was sent via certified mail.

61. Plaintiff once again received dispute results from Trans Union dated December 21, 2023. Trans Union's dispute results once again unlawfully verified that the inaccurate balance and monthly payment amounts, associated with the American Express account, were correctly reporting.

62. Furthermore, Plaintiff ran his Trans Union report on January 24, 2024 and noticed that Trans Union continued to report the inaccurate balance and monthly payment amounts, associated with the American Express account, on Plaintiff's Trans Union credit report.

***Damages***

63. Because of American Express', Equifax's, Experian's, and Trans Union's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

64. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

65. Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused him credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

66. In addition, the inaccurate American Express tradeline reported by American Express, Equifax, Experian, and Trans Union, respectively, has cost, and continues to cost, Plaintiff time and effort and expense in pursuit of corrected credit reports.

67. American Express', Equifax's, Experian's and Trans Union's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA, including but not necessarily limited to the following:

   a. Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

   b. Plaintiff was defamed by American Express, Equifax, Experian, and Trans Union, all of which published false information about Plaintiff that damaged Plaintiff's reputation for creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

   c. Plaintiff's Equifax, Experian, and Trans Union credit reports were published to third parties leading to reputational harm to Plaintiff.

***Bank of America account***

68. On or around August 2023, Plaintiff and D&A Services (on behalf of Bank of America) agreed to settle the Bank of America account in the amount of $3,972.20.

69. Specifically, Plaintiff and D&A Services (on behalf of Bank of America) agreed that Plaintiff would enter into a payment installment agreement wherein Plaintiff agreed to make an initial payment of $305.56, eleven subsequent payments of $305.56, and a final payment of $305.48, until the total amount of $3,972.20 was completed.

70. As a result, Plaintiff received a settlement letter, dated August 29, 2023, from D&A Services (on behalf of Bank of America) confirming the above-referenced settlement and payment installment agreement between Plaintiff and D&A Services (on behalf of Bank of America).

71. However, Bank of America is reporting an inaccurate balance of $6,360.00 (and is not reporting the agreed upon monthly payment amount) on Plaintiff's Equifax, Experian, and Trans Union credit reports – despite Plaintiff's settlement and payment installment agreement with D&A Services (on behalf of Bank of America) regarding the Bank of America account.

72. Following Plaintiff's disputes, Bank of America, Equifax, Experian, and Trans Union failed to perform FCRA-required reasonable investigations. As such, Bank of America unlawfully verified the disputed inaccurate balance and monthly payment amounts and each CRA Defendants, in turn, continued to report an incorrect, and therefore unverifiable, inaccurate balance and monthly payment amounts on (a) Plaintiff's Equifax, Experian, and Trans Union credit reports and, upon information and belief, (b) consumer reports about Plaintiff that each CRA Defendant prepared and distributed to third-parties.

73. Bank of America, Equifax, Experian, and Trans Union included the inaccurate balance and monthly payment amounts, associated with the Bank of America account, on consumer reports published to third parties. These publications defamed Plaintiff, thereby (a) giving creditors and/or potential creditors the false impression that Plaintiff was a poor credit risk, (b) impugning Plaintiff's reputation and character, and (c) causing Plaintiff to suffer substantial emotional distress. As such, Plaintiff has suffered concrete and particularized injuries pursuant to the FCRA such that Plaintiff has Article III standing to bring claims under the FCRA.

74. According to Plaintiff's Equifax credit report, dated May 30, 2024, there is one (1) inquiry on Plaintiff's credit file with Equifax. Specifically, there was a dissemination of inaccurate credit information, regarding the Bank of America account reported on Plaintiff's Equifax credit report, to Capital One (on April 25, 2024).

75. According to Plaintiff's Experian credit report, dated May 30, 2024, there are three (3) inquiries on Plaintiff's credit file with Experian. Specifically, there was a dissemination of inaccurate credit information, regarding the Bank of America account reported on Plaintiff's Experian credit report, to Capital One (on April 25, 2024), Bank of America (on May 29, 2024), and Citibank (on May 29, 2024).

76. According to Plaintiff's Trans Union credit report, dated May 30, 2024, there is one (1) inquiry on Plaintiff's credit file with Trans Union. Specifically, there was a dissemination of inaccurate credit information, regarding the Bank of America account reported on Plaintiff's Trans Union credit report, to Capital One (on April 25, 2024).

77. Furthermore, on or around February 2024, Plaintiff's request for credit with American Express, for a Blue Cash Everyday credit card, was not approved on or around February 7,

2024. This decline for credit signifies the dissemination of inaccurate credit profile information to third-party American Express.

***Equifax reported (and is likely still reporting) inaccurate balances and monthly payment amounts for the Bank of America account***

78. Equifax has reported and likely continues to report, a tradeline for the Bank of America account showing an inaccurate balance and monthly payment amounts on Plaintiff's Equifax credit report.

***Experian reported (and is likely still reporting) inaccurate balances and monthly payment amounts for the Bank of America account***

79. Experian has reported and likely continues to report, a tradeline for the Bank of America account showing an inaccurate balance and monthly payment amounts on Plaintiff's Experian credit report.

***Trans Union reported (and is likely still reporting) inaccurate balances and monthly payment amounts for the Bank of America account***

80. Trans Union has reported and likely continues to report, a tradeline for the Bank of America account showing an inaccurate balance and monthly payment amounts on Plaintiff's Trans Union credit report.

***Plaintiff's Disputes***

### *Equifax Disputes and Dispute Results*

81. By letter dated September 19, 2023, Plaintiff wrote Equifax to dispute the inaccurate balance and monthly payment amounts that Equifax was reporting concerning the Bank of America account. Specifically, Plaintiff informed Equifax of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement.

The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also attached D&A Services' settlement letter, dated August 29, 2023 wherein D&A Services (on behalf of Bank of America) confirmed the settlement and payment installment agreement between Plaintiff and D&A Services (on behalf of Bank of America). Plaintiff's September 19, 2023 dispute letter was sent via certified mail.

82. Plaintiff did not receive a response from Equifax. However, Equifax continued to report the inaccurate balance and monthly payment amounts, associated with the Bank of America account, on Plaintiff's Equifax credit report.

83. By letter dated December 1, 2023, Plaintiff once again wrote Equifax to dispute the inaccurate balance and monthly payment amounts that Equifax was reporting concerning the Bank of America account. Specifically, Plaintiff once again informed Equifax of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also once again attached D&A Services' settlement letter, dated August 29, 2023 wherein D&A Services (on behalf of Bank of America) confirmed the settlement and payment installment agreement between Plaintiff and D&A Services (on behalf of Bank of America). Plaintiff's December 1, 2023 dispute letter was sent via certified mail.

84. Plaintiff once again did not receive a response from Equifax. However, Equifax once again continued to report the inaccurate balance and monthly payment amounts, associated with the Bank of America account, on Plaintiff's Equifax credit report – according to Plaintiff's Equifax credit report, dated January 24, 2024.

*Experian Disputes and Dispute Results*

85. By letter dated September 19, 2023, Plaintiff wrote Experian to dispute the inaccurate balance and monthly payment amounts that Experian was reporting concerning the Bank of America account. Specifically, Plaintiff informed Experian of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also attached D&A Services' settlement letter, dated August 29, 2023 wherein D&A Services (on behalf of Bank of America) confirmed the settlement and payment installment agreement between Plaintiff and D&A Services (on behalf of Bank of America). Plaintiff's September 19, 2023 dispute letter was sent via certified mail.

86. Experian refused to do a reinvestigation and instead sent Plaintiff a letter, dated October 11, 2023, wherein Experian informed Plaintiff that it could not locate Plaintiff's credit information. Accordingly, Experian continued to report the inaccurate balance and monthly payment amounts, associated with the Bank of America account, on Plaintiff's Experian credit report.

87. By letter dated December 1, 2023, Plaintiff once again wrote Experian to dispute the inaccurate balance and monthly payment amounts that Experian was reporting concerning the Bank of America account. Specifically, Plaintiff once again informed Experian of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also once again attached D&A Services' settlement letter, dated August 29, 2023 wherein D&A Services (on behalf of Bank of America) confirmed the settlement and payment installment agreement between Plaintiff and D&A

Services (on behalf of Bank of America). Plaintiff's December 1, 2023 dispute letter was sent via certified mail.

88. Plaintiff received dispute results from Experian dated December 22, 2023. Experian's dispute results unlawfully verified that the inaccurate balance and monthly payment amounts, associated with the Bank of America account, was correctly reporting.

89. Furthermore, Plaintiff ran his Experian credit report on January 24, 2024 and noticed that Equifax continued to report the inaccurate balance and monthly payment amounts, associated with the Bank of America account, on Plaintiff's Experian credit report.

### *Trans Union Disputes and Dispute Results*

90. By letter dated September 19, 2023, Plaintiff wrote Trans Union to dispute the inaccurate balance and monthly payment amounts that Trans Union was reporting concerning the Bank of America account. Specifically, Plaintiff informed Trans Union of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also attached D&A Services' settlement letter, dated August 29, 2023 wherein D&A Services (on behalf of Bank of America) confirmed the settlement and payment installment agreement between Plaintiff and D&A Services (on behalf of Bank of America). Plaintiff's September 19, 2023 dispute letter was sent via certified mail.

91. Plaintiff received dispute results from Trans Union dated October 19, 2023. Trans Union's dispute results unlawfully verified that the inaccurate balance and monthly payment amounts, associated with the Bank of America account, were correctly reporting.

92. By letter dated December 1, 2023, Plaintiff once again wrote Trans Union to dispute the inaccurate balance and monthly payment amounts that Trans Union was reporting

concerning the Bank of America account. Specifically, Plaintiff once again informed Trans Union of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also once again attached D&A Services' settlement letter, dated August 29, 2023 wherein D&A Services (on behalf of Bank of America) confirmed the settlement and payment installment agreement between Plaintiff and D&A Services (on behalf of Bank of America). Plaintiff's December 1, 2023 dispute letter was sent via certified mail.

93. Plaintiff once again received dispute results from Trans Union dated December 21, 2023. Trans Union's dispute results once again unlawfully verified that the inaccurate balance and monthly payment amounts, associated with the Bank of America account, were correctly reporting.

94. Furthermore, Plaintiff ran his Trans Union report on January 24, 2024 and noticed that Trans Union continued to report the inaccurate balance and monthly payment amounts, associated with the Bank of America account, on Plaintiff's Trans Union credit report.

*Damages*

95. Because of Bank of America's, Equifax's, Experian's, and Trans Union's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

96. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

97. Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused him credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

98. In addition, the inaccurate Bank of America tradeline reported by Bank of America, Equifax, Experian, and Trans Union, respectively, has cost, and continues to cost, Plaintiff time and effort and expense in pursuit of corrected credit reports.

99. Bank of America's, Equifax's, Experian's and Trans Union's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA, including but not necessarily limited to the following:

a. Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

b. Plaintiff was defamed by Bank of America, Equifax, Experian, and Trans Union, all of which published false information about Plaintiff that damaged Plaintiff's reputation for creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

c. Plaintiff's Equifax, Experian, and Trans Union credit reports were published to third parties leading to reputational harm to Plaintiff.

*Barclays account*

100. On or around August 2023, Plaintiff and Northstar Location Services, LLC (on behalf of Barclays) agreed to settle the Barclays account in the amount of $3,089.03.

101. Specifically, Plaintiff and Northstar Location Services, LLC (on behalf of Barclays) agreed that Plaintiff would enter into a payment installment agreement wherein Plaintiff agreed to make an initial payment of $617.82, three subsequent payments of $617.82, and a final payment of $617.75, until the total amount of $3,089.03 was completed.

102. As a result, Plaintiff received a settlement letter, dated August 28, 2023, from Northstar Location Services, LLC (on behalf of Barclays) confirming the above-referenced settlement and payment installment agreement between Northstar Location Services, LLC (on behalf of Barclays).

103. However, Barclays is reporting an inaccurate balance of $9,061 (and is not reporting the agreed upon monthly payment amount) on Plaintiff's Equifax, Experian, and Trans Union credit reports – despite Plaintiff's settlement and payment installment agreement with Northstar Location Services, LLC (on behalf of Barclays) regarding the Barclays account.

104. Following Plaintiff's disputes, Barclays, Equifax, Experian, and Trans Union failed to perform FCRA-required reasonable investigations. As such, Barclays unlawfully verified the disputed inaccurate balance and monthly payment amounts and each CRA Defendants, in turn, continued to report an incorrect, and therefore unverifiable, inaccurate balance and monthly payment amounts on (a) Plaintiff's Equifax, Experian, and Trans Union credit reports and, upon information and belief, (b) consumer reports about Plaintiff that each CRA Defendant prepared and distributed to third-parties.

105.       Barclays, Equifax, Experian, and Trans Union included the inaccurate balance and monthly payment amounts, associated with the Barclays account, on consumer reports published to third parties. These publications defamed Plaintiff, thereby (a) giving creditors and/or potential creditors the false impression that Plaintiff was a poor credit risk, (b) impugning Plaintiff's reputation and character, and (c) causing Plaintiff to suffer substantial emotional distress. As such, Plaintiff has suffered concrete and particularized injuries pursuant to the FCRA such that Plaintiff has Article III standing to bring claims under the FCRA.

106.       According to Plaintiff's Equifax credit report, dated May 30, 2024, there is one (1) inquiry on Plaintiff's credit file with Equifax. Specifically, there was a dissemination of inaccurate credit information, regarding the Barclays account reported on Plaintiff's Equifax credit report, to Capital One (on April 25, 2024).

107.       According to Plaintiff's Experian credit report, dated May 30, 2024, there are three (3) inquiries on Plaintiff's credit file with Experian. Specifically, there was a dissemination of inaccurate credit information, regarding the Barclays account reported on Plaintiff's Experian credit report, to Capital One (on April 25, 2024), Bank of America (on May 29, 2024), and Citibank (on May 29, 2024).

108.       According to Plaintiff's Trans Union credit report, dated May 30, 2024, there is one (1) inquiry on Plaintiff's credit file with Trans Union. Specifically, there was a dissemination of inaccurate credit information, regarding the Barclays account reported on Plaintiff's Trans Union credit report, to Capital One (on April 25, 2024).

109.       Furthermore, on or around February 2024, Plaintiff's request for credit with American Express, for a Blue Cash Everyday credit card, was not approved on or around

February 7, 2024. This decline for credit signifies the dissemination of inaccurate credit profile information to third-party American Express.

**Equifax reported (and is likely still reporting) inaccurate balances and monthly payment amounts for the Barclays account**

110.     Equifax has reported and likely continues to report, a tradeline for the Barclays account showing an inaccurate balance and monthly payment amounts on Plaintiff's Equifax credit report.

**Experian reported (and is likely still reporting) inaccurate balances and monthly payment amounts for the Barclays account**

111.     Experian has reported and likely continues to report, a tradeline for the Barclays account showing an inaccurate balance and monthly payment amounts on Plaintiff's Experian credit report.

**Trans Union reported (and is likely still reporting) inaccurate balances and monthly payment amounts for the Barclays account**

112.     Trans Union has reported and likely continues to report, a tradeline for the Barclays account showing an inaccurate balance and monthly payment amounts on Plaintiff's Trans Union credit report.

**Plaintiff's Disputes**

**Equifax Disputes and Dispute Results**

113.     By letter dated September 19, 2023, Plaintiff wrote Equifax to dispute the inaccurate balance and monthly payment amounts that Equifax was reporting concerning the Barclays account. Specifically, Plaintiff informed Equifax of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement.

The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also attached D&A Services' settlement letter, dated August 28, 2023 wherein Northstar Location Services, LLC (on behalf of Barclays) confirmed the settlement and payment installment agreement between Plaintiff and Northstar Location Services, LLC (on behalf of Barclays). Plaintiff's September 19, 2023 dispute letter was sent via certified mail.

114.    Plaintiff did not receive a response from Equifax. However, Equifax continued to report the inaccurate balance and monthly payment amounts, associated with the Barclays account, on Plaintiff's Equifax credit report.

115.    By letter dated December 1, 2023, Plaintiff once again wrote Equifax to dispute the inaccurate balance and monthly payment amounts that Equifax was reporting concerning the Barclays account. Specifically, Plaintiff once again informed Equifax of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also once again attached D&A Services' settlement letter, dated August 28, 2023 wherein Northstar Location Services, LLC (on behalf of Barclays) confirmed the settlement and payment installment agreement between Plaintiff and Northstar Location Services, LLC (on behalf of Barclays). Plaintiff's December 1, 2023 dispute letter was sent via certified mail.

116.    Plaintiff once again did not receive a response from Equifax. However, Equifax once again continued to report the inaccurate balance and monthly payment amounts, associated with the Barclays account, on Plaintiff's Equifax credit report – according to Plaintiff's Equifax credit report, dated January 24, 2024.

*Experian Disputes and Dispute Results*

117.     By letter dated September 19, 2023, Plaintiff wrote Experian to dispute the inaccurate balance and monthly payment amounts that Experian was reporting concerning the Barclays account. Specifically, Plaintiff informed Experian of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also attached D&A Services' settlement letter, dated August 28, 2023 wherein Northstar Location Services, LLC (on behalf of Barclays) confirmed the settlement and payment installment agreement between Plaintiff and Northstar Location Services, LLC (on behalf of Barclays). Plaintiff's September 19, 2023 dispute letter was sent via certified mail.

118.     Experian refused to do a reinvestigation and instead sent Plaintiff a letter, dated October 11, 2023, wherein Experian informed Plaintiff that it could not locate Plaintiff's credit information. Accordingly, Experian continued to report the inaccurate balance and monthly payment amounts, associated with the Barclays account, on Plaintiff's Experian credit report.

119.     By letter dated December 1, 2023, Plaintiff once again wrote Experian to dispute the inaccurate balance and monthly payment amounts that Experian was reporting concerning the Barclays account. Specifically, Plaintiff once again informed Experian of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also once again attached D&A Services' settlement letter, dated August 28, 2023 wherein Northstar Location Services, LLC (on behalf of

Barclays) confirmed the settlement and payment installment agreement between Plaintiff and Northstar Location Services, LLC (on behalf of Barclays). Plaintiff's December 1, 2023 dispute letter was sent via certified mail.

120.     Plaintiff received dispute results from Experian dated December 22, 2023. Experian's dispute results unlawfully verified that the inaccurate balance and monthly payment amounts, associated with the Barclays account, was correctly reporting.

121.     Furthermore, Plaintiff ran his Experian credit report on January 24, 2024 and noticed that Equifax continued to report the inaccurate balance and monthly payment amounts, associated with the Barclays account, on Plaintiff's Experian credit report.

***Trans Union Disputes and Dispute Results***

122.     By letter dated September 19, 2023, Plaintiff wrote Trans Union to dispute the inaccurate balance and monthly payment amounts that Trans Union was reporting concerning the Barclays account. Specifically, Plaintiff informed Trans Union of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also attached D&A Services' settlement letter, dated August 28, 2023 wherein Northstar Location Services, LLC (on behalf of Barclays) confirmed the settlement and payment installment agreement between Plaintiff and Northstar Location Services, LLC (on behalf of Barclays). Plaintiff's September 19, 2023 dispute letter was sent via certified mail.

123.     Plaintiff received dispute results from Trans Union dated October 19, 2023. Trans Union's dispute results unlawfully verified that the inaccurate balance and monthly payment amounts, associated with the Barclays account, were correctly reporting.

124.     By letter dated December 1, 2023, Plaintiff once again wrote Trans Union to dispute the inaccurate balance and monthly payment amounts that Trans Union was reporting concerning the Barclays account. Specifically, Plaintiff once again informed Trans Union of the following: "I have renegotiated the accounts and came to a different payment and total amount due agreement. The following accounts are not stating newly agreed amount and payments that are being paid." Plaintiff also once again attached D&A Services' settlement letter, dated August 28, 2023 wherein Northstar Location Services, LLC (on behalf of Barclays) confirmed the settlement and payment installment agreement between Plaintiff and Northstar Location Services, LLC (on behalf of Barclays). Plaintiff's December 1, 2023 dispute letter was sent via certified mail.

125.     Plaintiff once again received dispute results from Trans Union dated December 21, 2023. Trans Union's dispute results once again unlawfully verified that the inaccurate balance and monthly payment amounts, associated with the Barclays account, were correctly reporting.

126.     Furthermore, Plaintiff ran his Trans Union report on January 24, 2024 and noticed that Trans Union continued to report the inaccurate balance and monthly payment amounts, associated with the Barclays account, on Plaintiff's Trans Union credit report.

*Damages*

127.     Because of Barclays', Equifax's, Experian's, and Trans Union's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

128.     Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

129.     Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused him credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

130.     In addition, the inaccurate Barclays tradeline reported by Barclays, Equifax, Experian, and Trans Union, respectively, has cost, and continues to cost, Plaintiff time and effort and expense in pursuit of corrected credit reports.

131.     Barclays', Equifax's, Experian's and Trans Union's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA, including but not necessarily limited to the following:

a.  Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

b.  Plaintiff was defamed by Barclays, Equifax, Experian, and Trans Union, all of which published false information about Plaintiff that damaged Plaintiff's reputation for creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

c.  Plaintiff's Equifax, Experian, and Trans Union credit reports were published to third parties leading to reputational harm to Plaintiff.

**FIRST CAUSE OF ACTION**

**Violations of FCRA § 1681s-2(b) Against**
**Defendant American Express**
**(Furnisher of Information)**

132.     Plaintiff realleges and incorporates the above paragraphs as if reasserted and

realleged herein.

133.    FCRA § 1681s-2(b), in pertinent part, provides: "if an item of information disputed by a consumer is found [by a furnisher] to be inaccurate or incomplete *or cannot be verified* after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, [the furnisher shall] . . . , based on the results of the reinvestigation promptly— (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." § 1681s-2(b)(1)(E)(i) – (iii) (emphasis added).

134.    American Express violated FCRA § 1681s-2(b) by its acts and omissions, including but not limited to:

a.    FCRA § 1681s-2(b)(A): failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of those disputes from Equifax, Experian, and Trans Union;

b.    FCRA § 1681s-2(b)(B): failing to review all relevant information provided by Equifax, Experian, and Trans Union; and

c.    FCRA § 1681s-2(b)(C) and (D): failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of § 1681s-2(b)(1).

135.    Had American Express performed reasonable investigations required by the FCRA, it could not have verified that the disputed balances and monthly payment amounts reported by Equifax, Experian and Trans Union were accurate. Nevertheless, American Express did verify to Equifax, Experian, and Trans Union that the disputed balances and monthly payment amounts that Equifax, Experian, and Trans Union were reporting were accurate. In doing so, American Express violated § 1681s-2(b).

136.    Because of American Express's FCRA violations, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

137.    American Express's violations of § 1681s-2(b) were willful, rendering it liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

138.    In the alternative, American Express's violations of § 1681s-2(b) were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from American Express pursuant to § 1681o.

## SECOND CAUSE OF ACTION

**Violations of FCRA § 1681s-2(b) Against
Defendant Bank of America
(Furnisher of Information)**

139.    Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

140.    FCRA § 1681s-2(b), in pertinent part, provides: "if an item of information disputed by a consumer is found [by a furnisher] to be inaccurate or incomplete *or cannot be verified* after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, [the furnisher shall] . . . , based on the results of the reinvestigation promptly— (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." § 1681s-2(b)(1)(E)(i) – (iii) (emphasis added).

141.    Bank of America violated FCRA § 1681s-2(b) by its acts and omissions, including but not limited to:

a. FCRA § 1681s-2(b)(A): failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of those disputes from Equifax, Experian, and Trans Union;

b. FCRA § 1681s-2(b)(B): failing to review all relevant information provided by Equifax, Experian, and Trans Union; and

c. FCRA § 1681s-2(b)(C) and (D): failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of § 1681s-2(b)(1).

142. Had Bank of America performed reasonable investigations required by the FCRA, it could not have verified that the disputed balances and monthly payment amounts reported by Equifax, Experian and Trans Union were accurate. Nevertheless, Bank of America did verify to Equifax, Experian, and Trans Union that the disputed balances and monthly payment amounts that Equifax, Experian, and Trans Union were reporting were accurate. In doing so, Bank of America violated § 1681s-2(b).

143. Because of Bank of America's FCRA violations, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

144. Bank of America's violations of § 1681s-2(b) were willful, rendering it liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

145. In the alternative, Bank of America's violations of § 1681s-2(b) were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from Bank of America pursuant to § 1681o.

**THIRD CAUSE OF ACTION**

**Violations of FCRA § 1681s-2(b) Against**
**Defendant Barclays**
**(Furnisher of Information)**

146.     Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

147.     FCRA § 1681s-2(b), in pertinent part, provides: "if an item of information disputed by a consumer is found [by a furnisher] to be inaccurate or incomplete *or cannot be verified* after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, [the furnisher shall] . . . , based on the results of the reinvestigation promptly— (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." § 1681s-2(b)(1)(E)(i) – (iii) (emphasis added).

148.     Barclays violated FCRA § 1681s-2(b) by its acts and omissions, including but not limited to:

d.   FCRA § 1681s-2(b)(A): failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of those disputes from Equifax, Experian, and Trans Union;

e.   FCRA § 1681s-2(b)(B): failing to review all relevant information provided by Equifax, Experian, and Trans Union; and

f.   FCRA § 1681s-2(b)(C) and (D): failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of § 1681s-2(b)(1).

149.     Had Barclays performed reasonable investigations required by the FCRA, it could not have verified that the disputed balances and monthly payment amounts reported by

Equifax, Experian and Trans Union were accurate. Nevertheless, Barclays did verify to Equifax, Experian, and Trans Union that the disputed balances and monthly payment amounts that Equifax, Experian, and Trans Union were reporting were accurate. In doing so, Barclays violated § 1681s-2(b).

150.    Because of Barclays' FCRA violations, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

151.    Barclays' violations of § 1681s-2(b) were willful, rendering it liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

152.    In the alternative, Barclays' violations of § 1681s-2(b) were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from Barclays pursuant to § 1681o.

**FOURTH CAUSE OF ACTION**

**Violations of the FCRA**
**Against Defendants Equifax, Experian and Trans Union**
**(Consumer Reporting Agencies)**

153.    Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

154.    FCRA § 1681i(a)(1) requires a CRA to complete a reasonable reinvestigation of the accuracy of any item of information in a consumer's credit file that the consumer disputes to the CRA within 30 days of the dispute. Pursuant to § 1681i(a)(5), a CRA must "promptly delete [disputed] information from the file of the consumer, or modify [disputed] information, as appropriate" after completing its § 1681i(a)(1) reinvestigation if the CRA finds that the disputed information is "inaccurate or incomplete *or cannot be verified*." §§

1681i(a)(1) and (a)(5) (emphasis added).

155.    Equifax, Experian, and Trans Union violated multiple sections of 15 U.S.C. § 1681i by their respective acts and omissions, including, but not limited to, the following:

    a.  failing to conduct a reasonable reinvestigation of Plaintiff's disputes to determine whether the disputed information was inaccurate and record the correct status or delete the items from Plaintiff's credit file in violation of § 1681i(a)(1);

    b.  failing to review and consider all relevant information submitted by Plaintiff concerning Plaintiff's disputes, in violation of § 1681i(a)(4); and

    c.  failing to properly modify or delete disputed information on and/or from Plaintiff's credit files upon a lawful reinvestigation in violation of § 1681i(a)(5).

156.    Had Equifax, Experian, and Trans Union reasonably investigated Plaintiff's disputes, the CRA Defendants could not have verified that they were reporting accurate balances and monthly payment amounts for the American Express, Bank of America, and Barclays accounts. Nevertheless, following Plaintiff's disputes, Equifax, Experian, and Trans Union each verified and continued to report inaccurate balances and monthly payment amounts for the American Express, Bank of America, and Barclays accounts. In so doing, Equifax, Experian, and Trans Union each violated § 1681i.

157.    Because of Equifax's, Experian's, and Trans Union's respective FCRA violations, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

158.    Violations of the FCRA by Equifax, Experian and Trans Union were willful, rendering each CRA Defendant liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

159.     In the alternative, Equifax's, Experian's, and Trans Union's respective violations of § 1681i were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from each CRA Defendant pursuant to § 1681o.

### FIFTH CAUSE OF ACTION

**Additional Violations of the FCRA**
**Against Defendant Experian**
**(Consumer Reporting Agency)**

160.     Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

161.     Pursuant to the FCRA, 15 U.S.C. § 1681i(a)(1)(A),

Subject to subsection (f) and except as provided in subsection (g), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

162.     Experian violated 15 USC §1681i(a) by failing to properly reinvestigate the American Express, Bank of America, and Barclays accounts, respond to Plaintiff within the required 30-day period, and delete the American Express, Bank of America, and Barclays accounts within the required 30-day period.

163.     Experian violated Plaintiff's rights under 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported, to or more third parties, pertaining to Plaintiff's credit report and credit files that Equifax published and maintained, as well as by failing to properly update and either delete the American Express, Bank of America, and Barclays accounts or report the American Express, Bank of America, and Barclays accounts accurately, and by failing

to block the American Express, Bank of America, and Barclays accounts from being reported at a later date, as well as failing to satisfactorily respond within the time period allowed by law. Instead, Experian, via its letter dated October 11, 2023, responded by informing Plaintiff that "[Experian was] unable to locate credit information about [Plaintiff]."

164.    As a result of Experian's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress.

165.    Experian's violations of 15 U.S.C. § 1681e(b) were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

166.    After receiving Plaintiff's dispute letter, dated September 19, 2023, Experian failed to conduct a reasonable reinvestigation as required by 15 U.S.C. § 1681i.

167.    As a result of Experian's violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress.

168.    Experian's violations of 15 U.S.C. § 1681i were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

169.     Experian prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff as that term is defined in 15 U.S.C. § 1681i(a).

170.     Such reports contained information about Plaintiff that was false, misleading, and inaccurate.

171.     Experian violated 15 U.S.C. § 1681i(a) by failing to conduct a reasonable reinvestigation after receiving Plaintiff's dispute letter, dated September 19, 2023, to determine whether the disputed information was accurate, record the current status of the disputed information, and/or delete the disputed items from Plaintiff's credit report.

172.     As a result of Experian's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress.

173.     Experian's violations of 15 U.S.C. § 1681i(a) were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

174.     As a result of Experian's violations of 15 U.S.C. § 1681i(a)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress.

175.     Experian's violations of 15 U.S.C. § 1681i(a)(1)(A) were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

176.    Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information and items from Plaintiff's credit report or modify the information and items upon a lawful reinvestigation.

177.    As a result of Experian's violations of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress.

178.    Experian's violations of 15 U.S.C. § 1681i(a)(5)(A) were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby respectfully requests a trial by jury for all claims and issues in his Complaint to which he is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against Defendants:

1. Awarding Plaintiff against each Defendant actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o;

2. Ordering the CRA Defendants to:

   a. immediately and permanently (i) delete and/or update all inaccurate information concerning the American Express, Bank of America, and Barclays accounts from and/or on Plaintiff's credit reports and files, and (ii) cease reporting inaccurate information concerning the American Express, Bank of America, and Barclays

accounts to any and all persons and entities to whom CRA Defendants report consumer credit information; and

b.  send updated and corrected consumer reports to all persons and entities to whom CRA Defendants have reported inaccurate information about the American Express, Bank of America, and Barclays accounts;

c.  grant Plaintiff tradeline deletion of the **American Express, Bank of America, and Barclays accounts**.

3.  Such other and further relief as may be necessary, just, and proper.

Dated: September 26, 2024

Respectfully submitted,

_____

Subhan Tariq, Esq.
Tariq Law PC
**Attorney for Plaintiff**
99 Park Avenue, Suite 1100
New York, NY 10016
Telephone: (212) 804-9095
Email: subhan@tariqlaw.com